**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** § | | |
| § | | |
| **GALVESTON BAY PROPERTIES,** § | **Case No. 19-36075** | |
| **LLC.** § | | |
|     Debtor. § | **Chapter 11** | |
| § | | |
| § | | |
| § | | |
| **In re:** § | | |
| § | | |
| **GALVESTON BAY OPERATING** § | **Case No. 19-36077** | |
| **COMPANY, LLC.** § | | |
|     Debtor. § | **Chapter 11** | |
| § | | |
| § | | |

**DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, AND 364(c) AND FEDERAL BANKRUPTCY RULES 2002, 4001(c) AND 9004 FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Galveston Bay Properties, LLC ("GBP") and Galveston Bay Operating Company, LLC ("GBOC" and, collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby file this Emergency Motion for Interim Order and Final Orders Authorizing the Debtors to Incur Post-Petition Secured Indebtedness (the "Motion"), and in support hereof, respectfully state as follows:

## I.
## SUMMARY OF PROPOSED TERMS OF THE DIP LOAN

1. The DIP Lender (defined herein) has proposed the following terms for the DIP Loan (defined herein):

| | |
|---|---|
| Debtors/Borrowers: | Galveston Bay Properties, LLC, and Galveston Bay Operating Company LLC, the debtors in possession in the Chapter 11 case filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Nos. 19-36075 and 19-36077 |
| DIP Lender: | Grace Oil Investments, LLC ("Grace"), or such entity created and designated by Grace Oil Investments, LLC (the "DIP Lender"). The DIP Lender will has the same ownership as Grace which is a member and manager of each of the Debtors. Grace is an "insider" as defined by 11 U.S.C. § 101(31)(B). Grace is owned and controlled by Andrey Korkunov. Accordingly, this is an insider transaction. |
| Total Amount: | $500,000.00 |
| Interim Amount: | Approximately $250,000 |
| Interest: | Advances under the DIP Loan will bear interest at a rate of 8% per annum |
| Use of Proceeds: | The initial tranche of the DIP Loan will be in the approximate amount of $250,000, which shall be used by the Debtors pursuant to and in accordance with the Interim Budget attached hereto as **Exhibit "A."** |
| | The final tranche of the DIP Loan will be in the approximate amount of $250,000, which shall be used by the Debtors pursuant to and in |

2

|  |  |
|---|---|
|  | accordance with the Final Budget, which Final Budget shall generally include production-related expenses, insurance, payroll, and legal and professional fees and expenses (as and when approved by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the United States Trustee guidelines and procedures). |
| Events of Default: | In addition to ordinary and customary terms of default as will be set forth in the DIP Loan Documents, the following shall be a default under the terms of the DIP Loan: |

   (a) the Debtors fail to comply with the Budget by (i) incurring expenses in any given week of over 10% percent of the weekly budgeted amount; or (ii) expending post-petition funds in a manner that is contrary to or inconsistent with the Budget, without the DIP Lender's prior written approval;
   (b) the Bankruptcy Court has not finally approved the DIP Loan and the DIP Loan Documents within 30 days after the Court enters an interim order approving a portion of the DIP Loan;
   (c) the Debtors' bankruptcy case is dismissed or converted to chapter 7;
   (d) a trustee, receiver, interim receiver, receiver and manager, a responsible officer or an examiner with enlarged powers shall be appointed in this case (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));
   (e) any other super-priority administrative expense claim or lien which is *pari passu* with or senior to the claims or liens of the DIP Lender under the DIP Loan shall be granted without the consent of the DIP Lender;
   (f) the Bankruptcy Court shall enter an order granting relief from the automatic stay to any creditor or party in interest (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtors which have an aggregate value in excess of $100,000 or (ii) to permit other actions that would have a material adverse effect on the Debtors or their respective estates;
   (g) an order shall be entered reversing, amending, supplementing, staying for a period of five days or more, vacating or otherwise modifying any interim or final order regarding the DIP Loan, or the Debtors or any of its affiliates shall apply for authority to do so, without the prior written consent of the DIP Lender, or the interim or final DIP financing order with respect to the DIP Loan shall cease to be in full force and effect;
   (h) any of the DIP Loan Documents shall cease to be effective or shall be contested by the Debtors;
   (i) the Debtors shall fail to comply with any order of the Bankruptcy Court governing this DIP Loan;
   (j) the filing of a motion, pleading or proceeding by the Debtors

which could reasonably be expected to result in a material impairment of the rights or interests of the DIP Lender or a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in a material impairment;

(k) definitive documentation, in form and substance satisfactory to the DIP Lender acting in good faith, shall not have been entered into within fourteen days after the date the Bankruptcy Court approves DIP Loan on an interim basis but prior to entry of a final order approving the DIP Loan, unless such date is extended by the DIP Lender acting in good faith; and

(l) such other usual and customary events of default that are reasonably requested by the DIP Lender and approved by the Bankruptcy Court in any final, non-interim order.

<u>Collateral/Priority</u>: All obligations of the Debtors to the DIP Lender, including, without limitation, all principal and accrued interest, costs, fees and expenses shall be:

(a) Entitled to the benefits of Bankruptcy Code § 364(c)(1), having priority over any and all administrative expenses of the kind specified in Bankruptcy Code §§ 503(b) and 507(b) subject to a "Carve Out" for amounts to be paid to: (i) the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, and (ii) all allowed and unpaid professional fees and out-of-pocket disbursements incurred by the Debtors and any Committee that remain unpaid subsequent to the payment, pro rata with other nonpriority administrative creditors, of such fees and expenses from available funds remaining in the Debtors' estates for such creditors, in an aggregate amount not exceeding $150,000 (such sum to be calculated by including unused retainer held by any professional subject to the Carve Out), in an aggregate amount not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in any Budget.

(b) Secured pursuant to Bankruptcy Code § 364(c)(2) by a perfected lien on, and security interest in, all of the Debtors' assets subject only to valid, perfected, existing pre-petition liens.

<u>Remedies</u>: Upon the occurrence of any Event of Default, the DIP Lender may immediately terminate the DIP Loan, declare the obligations in respect of the DIP Loan to be immediately due and payable and exercise remedies. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under the DIP Loan documentation, the DIP Order, and with respect to the Collateral.

Conditions Precedent:  The DIP Lender's obligation to provide funding under the DIP Loan shall be subject to:

    (a) With respect to the first tranche, entry of an interim order by the Bankruptcy Court approving the DIP Loan, in a form reasonably satisfactory to DIP Lender, and

    (b) With respect to the final tranch, entry of a final order by the Bankruptcy Court approving the DIP Loan, in a form reasonably satisfactory to DIP Lender, and executory by the Debtors of the DIP Loan Documents.

Avoidance Actions:  For the avoidance of any and all doubt, the DIP Lender shall not be granted any liens on any chapter 5 causes of action or commercial tort claims, all D&O claims and claims against or covered by directors and officers insurance policies, if any, and any and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing exceptions to the DIP Collateral.

## II.
## JURISDICTION

2. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

3. On November 1, 2019 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the above styled and numbered cases in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court" and the "Bankruptcy Cases"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No trustee or committee has been appointed in this matter.

4.  It should be noted from the outset that this is the second bankruptcy case filed by Debtor GBP within the last two years and two months. Specifically, a prior chapter 11 bankruptcy case was filed by Debtor GBP in the Western District of Texas, San Antonio Division on August 9, 2017. That bankruptcy case (the "Prior Chapter 11"), styled and numbered *In re Galveston Bay Properties, LLC*, Case No. 17-51905, concluded with the successful confirmation of a chapter 11 plan on February 6, 2018. That chapter 11 plan became effective on February 20, 2018. Unfortunately, however, projected costs have exceeded projected revenues, resulting in the instant filing. Additionally, by way of further disclosure, the assets owned by Debtor GBP have also been involved in an earlier jointly administered bankruptcy case that was previously pending before this Bankruptcy Court. That case was styled and numbered *In re Hydrocarb Energy Corporation et al.*, Case No. 16-31922 (the "Hydrocarb Bankruptcy"). Debtor GBP was formed to purchase the assets from the Hydrocarb Bankruptcy. Much has changed, however, since the assets were purchased from the Hydrocarb Bankruptcy and since the confirmation of the plan in the Prior Chapter 11. Specifically, the oil and gas assets involved are now consistently producing. Also, management and ownership of both GBP and GBOC has changed and each is now run by seasoned and experienced oil and gas professionals. If successful, the instant Bankruptcy Cases should be the last need for bankruptcy reorganization.

5.  GBP holds working interest and leasehold interests in four oil and gas fields in the shallow waters of Galveston Bay, Texas, known as Fishers Reef, North Point Bolivar, Redfish Reef and Trinity Bay, and 127 well bores within those fields as well as related assets, including, but not limited to, gas and oil gathering lines, production lines, gas lift lines to aid in lifting the oil from the wells, various production platforms equipped with separators, storage facilities, pressure pumping and lifting equipment to produce these wells, and transport oil and gas to its

6

onshore facilities which receive oil, dispose of water and also are used to store equipment and offices, and living quarters for the crew, pipelines, machinery and production equipment appurtenant to or used in connection with these assets (the "Oil and Gas Assets"). GBP also holds a $6,600,000 cash bond posted at the Texas RRC.

6. GBOC is the operator for GBP and has similar ownership as the GBP, albeit in different ownership percentages.

7. GBOC owes approximately $1.65MM in trade debt to vendors working on the Oil and Gas Assets. GBP owes its secured creditors Quintium Private Opportunities Fund, LP and Shadow Tree Funding Vehicle A-Hydrocarb LLC the approximate amount of $3,000,000. Approximately $40,000 remains due and payable to the general unsecured creditors of GBP under its prior plan of reorganization. Insider debt under the prior plan in the amount of $3,000,000 remains unpaid by GBP. The Debtors believe their assets are worth in excess of $10,000,000.00.

8. These Bankruptcy Cases were filed to allow the Debtors breathing room to reorganize and restructure their debt and arrange for funding of all or part of the capital required to pay its debts and continue operation and development of the Oil and Gas Assets. The Debtors have an immediate need for an influx of operating capital. This DIP Lending Motion is filed to address that need.

**IV.**
**RELIEF REQUESTED**

9. By this Motion, the Debtors seek the Bankruptcy Court's authorization under sections 364(c) of the Bankruptcy Code to obtain debtors-in-possession funding (the "DIP Loan") from Grace. Specifically, the Debtors requests that this Court approve the DIP Loan under the proposed terms and conditions described above and as further documented in the DIP Loan Documents or such terms and conditions approved by the Bankruptcy Court after consideration of

7

this Motion. The DIP Loan shall be memorialized in a loan agreement, a note or notes, a security agreement and deeds of trust, and related instruments necessary to fully document the DIP Loan (collectively, the "DIP Loan Documents").

10. The Debtors seek entry of a final order (the "DIP Order") authorizing borrowing in the total aggregate amount of up to $500,000.00 from the DIP Lender. Of this amount, initial interim financing in the first twenty-one (21) day period is requested in the approximate amount $250,000. The funds to be extended under the DIP Order will provide the Debtors with operating capital to allow it to make fund payroll obligations for the Debtors, to pay critical vendors identified in a separate Critical Vendor Motion, and to fund ongoing operations to maintain the Debtors' offshore production.

11. The Debtors have, in their best business judgment, determined that the DIP Loan is vital and necessary to the Debtors' ability to hold its existing leases and allow the Debtors to operate in chapter 11 with the ultimate goal of a successful reorganization. Without access to the DIP Loan, the Debtors will not have funds to finance their operations and continue as a going concern. Because of the status of current (non-)operations, the Debtors are not generating revenue to fund necessary expenses and operations and will not for at least 30 days after funding of the DIP Loan. Consequently, the Debtors' continued viability and ability to reorganize while maintaining operations depends heavily upon the approval of the DIP Loan.

12. The Debtors submit that the terms of the DIP Loan are fair and reasonable under the circumstances. The DIP Lender is offering the DIP Loan with the view that this financing will provide necessary working capital to allow the Debtors to fund existing payroll obligations, and maintain the leases and offshore assets, thereby maximizing the value of the Debtors' estates for all stakeholders. The Debtors intend to move quickly to plan confirmation. A plan and disclosure

statement will be filed no later than December 31, 2019. The Debtors will seek to arrive at a plan confirmation hearing no later than March 1, 2020, or earlier if possible.

13. The Debtors request that this Court approve access to the DIP Loan on an *interim* basis pursuant to the twenty-one (21) day budget attached hereto as **Exhibit "A"**, and on a *final* basis according to a final budget to be presented prior to the final hearing designed to cover operations to confirmation of a plan of reorganization.

## V.
## AUTHORITY FOR RELIEF REQUESTED

14. Section 364(b) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(b).

15. If a debtor cannot obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, a bankruptcy court can authorize the incurring of debt:

(1) with priority over an or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c)(1) – (3).

16. Additionally, Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization for post-petition financing and specifies, *inter alia*, the content, hearing and notice requires of the motion. *See* FED. R. BANKR. P. 4001(c)(1) - (3).

9

17.     In seeking the approval of a post-petition loan, bankruptcy courts consider the following factors in determining whether obtaining post-petition financing pursuant to section 364(c) is appropriate: (i) whether the debtor is unable to obtain unsecured credit under section 364(b); (ii) whether the transaction is necessary to preserve the assets of the debtor's estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate under the circumstances. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011) (noting these three factors in considering proposed post-petition financing) (citations omitted); *In re Farmland Indus., Inc.*, 294 B.R. 855, 879 (Bankr. W.D. Mo. 2003) (noting that courts look to various factors including whether "the proposed financing is an exercise of sound and reasonable business judgment").

**A.     The Debtors Have Been Unable to Obtain an Offer for Unsecured Financing**

18.     The Debtors have been unable to obtain unsecured credit from any third parties allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors have negotiated with the DIP Lender regarding the terms of the proposed DIP Loan, but the DIP Lender is unwilling to make the DIP Loan to move the Bankrutpcy Cases forward toward reorganization without a secured lien on all assets of the Debtors subject only to existing, valid, perfected pre-petition liens. Given the exigent circumstances of the Bankruptcy Cases, the Debtors believe a first lien would also be required by any other prospective lender, assuming one could be found. Accordingly, the Debtors submit that they have been unable to obtain unsecured credit.

**B.     The DIP Loan is Necessary to Preserve Assets of the Bankruptcy Estates**

19.     The Debtors have inadequate existing revenue to operate their business and to preserve their bankruptcy estates. As a result, the Debtors submit that entering into the DIP Loan constitutes an exercise of their sound business judgment because it will allow the Debtors to

10

maintain their current level of operations needed to preserve the value of the bankruptcy estates and progress toward reorganization. Without approval of the DIP Loan, the Debtors will be unable to pay employees, make insurance payments, or otherwise satisfy its obligations. Accordingly, the Debtors submit that the DIP Loan should be approved by the Court because it is vital to preserving estate value.

**C.**     **The Terms of the DIP Loan Are Fair and Reasonable**

20.     The Debtors believe that the terms of the proposed DIP Loan have been negotiated at arms length and are fair and reasonable under the circumstances. The interest rate is in line with those found in other debtor in possession loans frequently approved by bankruptcy courts. Further, the DIP Loan is not priming prepetition liens. As set forth above, given that the Debtors are not generating sufficient cash, the Debtors submit that they could never obtain a loan under equal or better terms if they had to go into the capital markets, and that the DIP Loan is necessary and appropriate under the circumstances. In light of the foregoing, the Debtors submit that the terms of the DIP Loan should be approved in all respects.

## VI.
## INTERIM HEARING AND FINAL HEARINGS

21.     An immediate need exists for the Debtors to incur post-petition debt in order to (i) restart the Debtors' oil and gas operations, and (ii) to pay ongoing expenses in the ordinary course of business.

22.     Without the immediate approval of the DIP Loan for the interim period, the Debtors will be unable to restart their operations, which will lead to the continued decline in the value of the Debtors' estates. Obviously, this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors. The Debtors' businesses are a going concern has a value far in excess of any value that could be obtained

in a chapter 7 liquidation. Accordingly, the Debtors have requested an expedited hearing (the "Interim Hearing") on the interim approval of the DIP Loan.

23. Pursuant to Bankruptcy Rule 4001, the Debtors request that this Court authorize the interim borrowings set forth above under the proposed DIP Loan in order to avoid immediate and irreparable harm to the bankruptcy estates pending a Final Hearing. The Debtors further request immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2), (c)(2) and Rules 4001-1(b) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas. The request to enter into the DIP Loan on an expedited basis is necessary to avoid immediate and irreparable harm to the Debtors and their bankruptcy estates.

24. The Debtors further request that this Court schedule the Final Hearing as soon as this Court's schedule permits, following 14 days after service of this Motion.

## VII.
## PRAYER

WHEREFORE, Debtors respectfully requests that this Court enter an order, substantially in the form submitted herewith, (i) authorizing the Debtors to borrow the funds necessary as set forth herein pursuant the Interim Budget and the Final Budget; (ii) authorizing the Debtors to execute and deliver the DIP Loan Documents and perform such other and further acts as may be necessary in connection therewith; (iii) setting a final hearing as soon as this Court's schedule permits, following 14 days after service of this Motion for approval and entry of a final order; and (iv) granting the Debtors such other and further relief as this Court may deem just and proper.

Respectfully submitted on this 3rd day of November 2019.

By:    /s/ *Kell C. Mercer*
     Kell C. Mercer
     Texas Bar No. 24007668
     **Kell C. Mercer, PC**
     1602 E. Cesar Chavez Street
     Austin, Texas 78702
     Tel: (512) 627-3512
     kell.mercer@mercer-law-pc.com

     AND

By:    /s/ *Christopher Adams*
     Christopher Adams
     Texas Bar No. 24009857
     cadams@okinadams.com
     Ryan A. O'Connor
     Texas Bar No. 24098190
     roconnor@okinadams.com
     **Okin Adams LLP**
     1113 Vine St., Suite 240
     Houston, Texas 77002
     Tel: 713.228.4100
     Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR DEBTORS**

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the forgoing Motion was served upon all parties on the attached service list pursuant to the Federal and Local Bankruptcy Rules on the 3rd day of November 2019.

By:    /s/ *Kell C. Mercer*
     Kell C. Mercer

## **CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)**

In accordance with Bankruptcy Local Rule 9013-1(I), I hereby certify to the accuracy of the matters set forth in the foregoing Motion.

By:    /s/ *Kell C. Mercer*
       Kell C. Mercer